UNITED STATES of America

v.

**Cyrus SANDERS, Jr., Defendant.**

**Nos. 4:CR–96–0023/01, 4:CV–98–0076.**

United States District Court,
M.D. Pennsylvania.

April 29, 1998.

Dennis C. Pfannenschmidt, Asst. U.S. Atty., Harrisburg, PA, for U.S.

Kyle W. Rude, Williamsport, PA, for Cyrus Sanders, Jr.

## *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On January 24, 1996, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendant Cyrus Sanders, Jr., with conspiracy to possess a firearm by a convicted felon and to traffic in stolen firearms in violation of 18 U.S.C. §§ 371, 922(g)(1), 922(j) (Count I), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count II), trafficking in stolen firearms in violation of 18 U.S.C. § 922(j) (Count III), and retaliating against a witness in violation of 18 U.S.C. § 151 (count IV). Sanders entered a plea of guilty to Counts I and III on April 29, 1996; Counts II and IV were dismissed on motion of the government. The plea to Count I was as it related to the underlying offense of trafficking in stolen firearms (Count III). The dismissal therefore included a portion of Count

I, that related to the felon-in-possession charge (Count II). On October 21, 1996, following an evidentiary hearing, the court sentenced Sanders to 70 months' incarceration.

After a remand by the Third Circuit for the purpose of placing factual matters on the record, 124 F.3d 189 (3d Cir.1997)(table), that court apparently affirmed the conviction.[1] Neither the record before this court nor a search of the WESTLAW© electronic database reflects the order doing so. However, the Supreme Court of the United States denied *certiorari* on December 1, 1997. *Sanders v. United States,* —— U.S. ——, 118 S.Ct. 582, 139 L.Ed.2d 420 (1997).

On January 14, 1998, acting *pro se,* Sanders filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. We appointed counsel for Sanders and directed the filing of a statement of new evidence supporting two of the grounds for relief cited in his motion and established a further briefing schedule.

Both Sanders and the government have filed briefs related to the motion so that it is ripe for disposition.

## DISCUSSION:

### I. STATEMENT OF FACTS

Our disposition of the § 2255 motion is based primarily on matters of law, and so we provide only a brief summary of facts for background purposes.

Between September, 1990, and April, 1994, Sanders conspired with Ronald Brewer and Paul Lacy, then a juvenile, to burglarize residences in remote locations. Most of the burglaries involved Sanders and Brewer. Typically, Sanders would select a target and return later with Brewer. Sanders, who has some familiarity with such matters, would cut telephone and/or alarm cables before making a forcible entry. They would steal items which appeared to have value for resale, such as 4-wheel ATV's, lawn mowers, snowmobiles, and (of particular importance) guns.

Other guns were obtained by providing false information to legitimate firearms dealers. The conspirators disposed of the guns through sales to private individuals and legitimate dealers, often at gun shows. A total of 44 stolen guns were attributed to Sanders.

The burglary spree and gun trafficking scheme ended when Brewer was arrested for passing bad checks. On his arrest, Brewer began telling police about his and Sanders' involvement in the burglaries; he later revealed Lacy's involvement as well. At later court proceedings, Sanders would make threatening gestures toward Brewer, such as by running his hand across his throat or pretending to shoot himself in the head. Although Brewer was the only person to observe this conduct, Brewer's testimony on the point was corroborated by letters written by Sanders which contained threatening language. Some of these letters were sent to people likely to relate the contents to Brewer.

## II. PRELIMINARY MATTERS

Before addressing the motion itself, we note several matters which also deserve attention.

First, the motion by Sanders was timely. Timeliness is a relatively new issue with respect to § 2255, a one-year time limit having been added in 1996. Pub.L. 104–132, Title I, § 105, 110 Stat. 1220 (April 24, 1996). The Supreme Court having denied Sanders' petition for a writ of certiorari on December 1, 1997, Sanders' *pro se* § 2255 motion is well within the one-year limitations period.

Another matter which warrants attention is the terminology employed by the parties and the court. In his brief, Sanders states, "A plea agreement does not waive defendant's right to bring a habeas corpus petition unless it does so expressly." Defendant's Brief at 8 (citing *United States v. Pruitt,* 32 F.3d 431 (9th Cir.1994)). Actually, the Pruitt

---

1. The parties' briefs indicate that the Third Circuit "denied" Sanders' appeal on August 18, 1997. Defendant's Brief in Support of the 28 U.S.C. § 2255 Motion at 1; Government's Response to Petitioner's 28 U.S.C. § 2255 Motion at 1 (hereinafter, "Defendant's Brief" and "Govern- ment's Response," respectively). The court did not receive notice of that action. Moreover, the date is somewhat surprising, as it coincides with our own order setting forth the findings prescribed by the Third Circuit. *See* Order of Court dated August 18, 1997 (record document no. 65).

court wrote, "A plea agreement does not waive the right to bring a § 2255 motion unless it does so expressly." 32 F.3d at 433. The headnotes [2] preceding the opinion refer to a "federal habeas corpus motion."

This interchange is reflective of a trend in which courts, attorneys, and (apparently) legal publishers refer to § 2255 motions as petitions for habeas corpus. *See e.g., Santana v. United States*, 98 F.3d 752, 753 n. 1 (3d Cir.1996)(referring to § 2255 motions as petitions for habeas corpus despite distinction in historical notes); *United States v. Vancol*, 916 F.Supp. 372, 377 (D.Del.1996)(court may grant "federal habeas corpus relief" under § 2255). *But see United States v. Skandier*, 125 F.3d 178 (3d Cir.1997)(referring to § 2255 motions and state habeas corpus petitions without equation); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir.1996)(referring to habeas corpus relief available to a federal prisoner under 28 U.S.C. § 2241).

Section 2255 itself indicates that it does not provide habeas corpus relief, at least not in the form of a writ of habeas corpus. Both before and after its amendment, § 2255 was/is captioned, "Federal custody; remedies on motion attacking sentence." The first, unnumbered paragraph of § 2255 indicates that a person claiming relief "may move the court which imposed the sentence to vacate, set aside or correct the sentence." The fourth unnumbered paragraph provides that appeals are to be taken in the same manner as from final judgment on an application for habeas corpus. Most importantly, perhaps, the fifth unnumbered paragraph provides that an application for a writ of habeas corpus may not be entertained if the applicant is eligible to seek relief under § 2255.

In contrast, the caption to § 2254 reads, "State custody; remedies in Federal courts." Subsection (a) thereto provides that certain federal courts or judicial officers may "entertain an application for a writ of habeas corpus" by a person in state custody. Further,

§ 2241 provides the authority of federal courts and/or judicial officers to entertain applications for writs of habeas corpus by persons in federal custody.

Other statutory provisions distinguish an application for a writ of habeas corpus from a motion under § 2255. *See, e.g.,* 28 U.S.C. § 2253(a) ("In a habeas corpus proceeding or a proceeding under section 2255 ..."); Appendix of Forms, Rules Governing § 2254 Cases in the United States District Court, 28 U.S.C. following § 2254 (captioned, "MODEL FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254"; form captioned, "PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY"); Appendix of Forms, Rules Governing § 2255 Proceedings for the United States District Courts, 28 U.S.C. following § 2255 (captioned, "MODEL FORM FOR MOTIONS UNDER 28 U.S.C. § 2255"; form captioned, "MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY").

Finally, the relief available under § 2255 is somewhat broader than that available under § 2254. Specifically, § 2254 permits issuance of a writ of habeas corpus when a person is in state custody "in violation of the Constitution or laws or treaties of the United States." Sec. 2254(a). A § 2255 motion may be granted when "the sentence was imposed in violation of the Constitution or laws of the United States, ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack ..." Sec. 2255 (first unnumbered paragraph).

The distinction is important for two reasons. First, while many principles of habeas corpus jurisprudence are applicable in § 2255 proceedings, *Vancol* at 377 n. 3 (citing *United States v. Nahodil*, 36 F.3d 323, 327 (3d Cir.1994) [3]), as noted above, the language of

---

2. Or "Keynotes"© as they are known when used in West Publishing Co. legal publications.

3. In *Nahodil*, the Third Circuit stated that a § 2255 motion is "the federal equivalent" of a § 2254 petition. Id. at 327. No citation follows

that statement. Because Rule 9(a) of the rules related to each section were indistinguishable, the Third Circuit applied principles of 2254 precedent in the context of reviewing the denial a § 2255 motion. In so doing, it quoted a Supreme Court opinion to the effect that "§ 2255

§ 2255 provides for relief in more circumstances. More importantly, use of the term "habeas corpus" confuses § 2255 with § 2241. *See generally Felker v. Turpin,* 518 U.S. 651, 656–657, 116 S.Ct. 2333, 2337–2338, 135 L.Ed.2d 827 (1996)(reviewing history of federal habeas corpus, including fact that statutes originally providing such authority were "direct ancestors" of provisions of § 2241). The Third Circuit itself long ago recognized a fundamental distinction between § 2241 and § 2255: "The purpose of Section 2255 was to require a federal prisoner to exhaust his remedies in the courts of the District and Circuit in which he was-convicted and sentenced, and to apply to the Supreme Court, on Certiorari from a denial of such remedies, before seeking release on *habeas corpus.*" *Crismond v. Blackwell,* 333 F.2d 374, 377 (3d Cir.1964) (emphasis in original).

For these reasons, this court will use the term "§ 2255 motion" and "relief under § 2255" as opposed to "petition for a writ of habeas corpus" or "habeas relief" or similar language. We write at length to emphasize that we have specific reasons for doing so.

We turn, then, to the applicable standards.

### III. STANDARDS

#### A. Section 2255

As relevant, § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (first unnumbered paragraph).

■ "A petitioner's failure to raise a particular error either at trial or on direct appeal generally precludes the assertion of that error for the first time in a collateral attack under section 2255." *Taccetta v. United States,* 975 F.Supp. 672, 676 (D.N.J. 1997) (citing, *inter alia, United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993), *reh'g denied*). When the defendant has failed to raise an issue on direct appeal, the issue is procedurally defaulted, and the defendant must show cause for failing to raise the issue and actual prejudice arising from the error. *Taccetta* at 677 (citing, *inter alia, United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). The cause must be some factor external to the defense, such as interference by officials, the unavailability of the factual or legal basis for the claim, or ineffective assistance of counsel. *Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397(1986); *McCleskey v. Zant,* 499 U.S. 467, 493–494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). Attorney error short of ineffective assistance does not excuse procedural default. *Id.* (quoting *McCleskey*).

■ The cause-and-prejudice standard applies in instances in which the judgment of conviction and sentence was entered pursuant to a guilty plea. *Matthews v. United States,* 114 F.3d 112, 113 (8th Cir.1997), *reh'g, reh'g en banc denied, cert. denied,* —— U.S. ——, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998). The same standard has been applied

was intended to mirror § 2254 in operative effect." *Id.* (quoting *Reed v. Farley,* 512 U.S. 339, 353, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994); internal quotations, further citation omitted). The full quotation from *Davis* is, "But it is scarcely doubted that, at *least where mere statutory violations are at issue,* '§ 2255 was intended to mirror § 2254 in operative effect.' " *Reed,* 512 U.S. at 353, 114 S.Ct. 2291 (emphasis added; quoting *Davis v. U.S.,* 417 U.S. 333, 344, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)). The Supreme Court then noted that the same standard applies to consideration of non-constitutional claims un-

der both § 2254 and § 2255, i.e. the alleged error must constitute a fundamental defect in the proceedings which inherently results in a fundamental miscarriage of justice. *Id.* 512 U.S. at 354, 114 S.Ct. 2291. *Reed* does not stand for the proposition that § 2254 and § 2255 are equivalent in all instances. In fact, the very wording indicates otherwise: a federal court may correct, under 2255, an error in a sentence it has imposed, as by a miscalculation of the Sentencing Guidelines, but may not do so in § 2254 proceedings unless the fundamental error standard is met:

in cases both before and after the most recent amendments to § 2255. *Compare Vancol* (pre-amendment); *Henry v. United States,* 913 F.Supp. 334 (M.D.Pa.)(pre-amendment), aff'd, 96 F.3d 1435 (3d Cir.1996)(table), with *Taccetta* (post-amendment); *Matthews* (post-amendment).

The government indicates that Sanders "waived" the first two issues presented by pleading guilty. Government's Response at 7. The case cited by the government, *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)(mis-cited by both the government and Sanders as *"Borce"*), indicates that waiver is not at issue.

Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty. Waiver in that sense is not required. For example, the respondent in *Tollett [v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973),] pleaded guilty to first-degree murder, and later filed a petition for habeas corpus contending that his plea should be set aside because black citizens had been excluded from the grand jury that indicted him. The collateral challenge was foreclosed by the earlier guilty plea. Although at the time of the indictment the facts relating to the selection of the grand jury were not known to respondent and his attorney, we held that to be irrelevant:

> "If the issue were to be cast solely in terms of 'waiver,' the Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here. But just as the guilty pleas in the *Brady* trilogy[4] were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury." 411 U.S., at 266, 93 S.Ct. 1602, 36 L.Ed.2d 235.

> *See also Menna [v. New York],* 423 U.S. [423 U.S., 61,] 62, n. 2, 46 L.Ed.2d 195, 96 S.Ct. 241 ("[W]aiver was not the basic ingredient of this line of cases").

*Broce,* 488 U.S. at 573, 109 S.Ct. 757 (latter brackets in original; footnote added).

In this instance, then, the question is not whether Sanders waived the specific defense of statutory interpretation discussed below, but whether he is procedurally barred from presenting the issue on collateral review. The difference would be that the guilty plea colloquy would have to include questions concerning Sanders' awareness of that specific defense and willingness to plead guilty regardless to constitute a waiver of the defense. In contrast, the procedural bar will exist for defenses generally due to the entry of a knowing and voluntary plea. The failure to raise the defense will be excused only by meeting the cause-and-prejudice standard, which Sanders must do by showing ineffective assistance of counsel.[5]

In this context, we would note that Sanders' response to the government's contention of waiver also misses the point. Sanders recites, "Moreover, this argument is contrary to Federal Rule of Criminal Procedure 11(c)(1) which states that a plea 'cannot be truly voluntary unless the defendant possesses an understanding of the law in relationship to the facts.'" Defendant's Brief at 8 (citing *Broce,* at 568, 109 S.Ct. 757). Nothing in Rule 11 or Broce requires a specific waiver of every imaginable defense before a guilty plea may be found knowing and voluntary. In fact, the reasoning of *Broce* is to the contrary: "Respondents had the opportunity, instead of entering their guilty pleas, to challenge the theory of the indictments and to attempt to show the existence of only one conspiracy in a trial-type proceeding." *Broce,* at 571, 109 S.Ct. 757. *See also United States v. Abreo,* 30 F.3d 29 (5th Cir.)(defendant who entered unconditional guilty plea did not preserve his right to pursue a claim for suppression of evidence), *cert. denied,* 513

4. Court's footnote. The "trilogy" refers to *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Tollett.*

5. No other reasonable basis for finding cause to excuse the procedural default is reflected in this record.

U.S. 1064, 115 S.Ct. 681, 130 L.Ed.2d 613 (1994).

In short, the issue is not whether Sanders has waived the right to argue that his admitted conduct does not violate the statute. Rather, since he did not raise the issue on direct appeal, the issue is whether he has shown cause and prejudice to circumvent the procedural bar. The only cause proffered is ineffective assistance of counsel.

### B. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a defendant must establish that (1) the performance of counsel fell below an objective standard of reasonableness, and (2) the errors of counsel prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687–688, 691–692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690, 104 S.Ct. 2052. As to the prejudice prong of this test:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694, 104 S.Ct. 2052.

The burden of proving a claim of ineffective assistance of counsel is on the petitioner.

*Gov't of the Virgin Islands v. Nicholas,* 759 F.2d 1073, 1081 (3d Cir.1985).

■ In order to be entitled to an evidentiary hearing on a claim on collateral review, the claimant has the burden to allege facts which, if proven, would entitle him or her to relief. *Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir.), *cert. denied,* 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989). A hearing is not required when the record is complete or when the defendant raises only legal claims for which no evidence is necessary. *Id.*

### IV. SANDERS' GROUNDS FOR RELIEF

Sanders recites four grounds for relief under § 2255. They are set forth as the following four issues:

A. WHETHER THE GUILTY PLEA AND SENTENCE OF DEFENDANT WERE IN VIOLATION OF THE UNITED STATES CONSTITUTION AND LAWS OF THE UNITED STATES BECAUSE 18 U.S.C. § 922(j), TRAFFICKING IN STOLEN FIREARMS, REQUIRED THE FIREARMS INVOLVED IN THE OFFENSE BE MOVED ACROSS STATE LINES BY THE DEFENDANT?

B. WHETHER DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR NOT CHALLENGING THE § 922(j) OFFENSE ON THE GROUND THAT THE FIREARM HAD NOT BEEN MOVED ACROSS STATE LINES BY DEFENDANT AND FOR ALLOWING DEFENDANT TO PLEAD GUILTY TO THE OFFENSE?

C. WHETHER WITNESS RONALD BREWER PERJURED HIMSELF AT THE SENTENCING HEARING AND OTHERWISE PROVIDED FALSE INFORMATION TO THE INVESTIGATORS AND PROBATION OFFICER?

D. WHETHER DEFENDANT WAS SENTENCED ON THE BASIS OF FALSE INFORMATION CON-

TAINED WITHIN THE PRESENTENCE REPORT AND FALSE TESTIMONY PRESENTED AT THE SENTENCING HEARING?

Defendant's Brief at 2 (minor grammatical changes have been made by the court). We will address issues A and B together and issues C and D together as each pair is related.

## V. *TRAFFICKING IN STOLEN FIREARMS*

Count 3 of the indictment charged Sanders with trafficking in stolen firearms, along with aiding and abetting the same. The offense was alleged to have taken place between September, 1990, and April, 1994.

At the time of the offense, the relevant statutory provision read:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

18 U.S.C. § 922(j). Reduced to simpler terms applicable under the present circumstances, this version of § 922(j) may be read, "It shall be unlawful for any person to [traffic in] any stolen firearm which has been shipped or transported in interstate commerce, knowing or having reasonable cause to believe that the firearm was stolen."

In 1994, after completion of the Sanders' offenses, § 922(j) was amended to read:

It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, *either before or after it was stolen,* knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

28 U.S.C. § 922(j) (as amended by Pub.L. 103–322, § 110511; emphasis added).[6] Again reducing to simpler terms for current purposes, § 922(j) may be read, "It shall be unlawful for any person to [traffic in] any stolen firearm which has been shipped or transported in interstate commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm was stolen."

Sanders contends that the record does not support a finding that he carried or shipped any firearm across state lines after it was stolen, so that he cannot have been guilty under the earlier version of the statute. This argument rests on the proposition that the phrase "which has been shipped or transported in interstate commerce" modifies "stolen firearm" as opposed to just "firearm."

Sanders points out that three courts of appeals have considered this issue. Two, the First and the Sixth Circuits, have held that the pre-amendment version of § 922(j) applied to firearms that moved in interstate commerce before being stolen. *United States v. Staula,* 80 F.3d 596, 605 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996); *United States v. Honaker,* 5 F.3d 160, 162 (6th Cir.1993), *cert. denied,* 510 U.S. 1180, ·114 S.Ct. 1226, 127 L.Ed.2d 571 (1994). The Ninth Circuit has held that the firearms must have moved in interstate commerce after being stolen for a violation of former § 922(j) to occur. *United States v. Cruz,* 50 F.3d 714 (9th Cir.1995), *cert. denied sub nom. Quintanilla v. United States,* —— U.S. ——, 118 S.Ct. 611, 139 L.Ed.2d 498 (1997).

 Sanders concedes that the issue was not raised before this court prior to entry of his guilty plea or on direct appeal. The claim is procedurally barred, then, absent circumstances permitting Sanders to avoid the procedural bar. Sanders' contention that his guilty plea cannot have been voluntary unless he knew about this potential defense fails for the reasons discussed above: a defendant need not waive all specific de-

---

**6.** The word "possess" was inserted after "receive" in the same amendment.

fenses or any specific defense before entering a valid guilty plea.

The only remaining means for Sanders to avoid the procedural bar, at least on this record, is through his claim of ineffective assistance of counsel for failing to raise the issue. It can be said that Sanders' former counsel should have known that the issue of the interpretation of the § 922(j) was an open question in this circuit, and that other circuits were split on how to resolve the purported ambiguity. The question becomes whether failing to pursue the issue, and instead electing to advise his client to plead guilty rather than risk an adverse ruling in this court and on appeal (the government did not offer a conditional plea) was objectively unreasonable. In examining this question, it is necessary to weigh the benefits gained from pleading guilty against the potential adverse consequences of proceeding to trial.

This case was somewhat unique in that, despite the entry of a guilty plea, the government presented at the sentencing hearing much of the evidence that would have been presented to a jury at trial. This included testimony from Brewer, a transcript of grand jury testimony by Lacy, the letters sent by Sanders, etc. The court can say with some certainty that there was very strong evidence of Sanders' guilt, which may be an understatement. We think it very likely that a jury would have found Sanders guilty of all counts of the indictment, and counsel would have been reasonable to presume as much in evaluating whether to advise Sanders to accept the plea agreement offered by the government.[7]

To evaluate the benefit of the guilty plea, then, we will presume that Sanders was convicted of all counts of the indictment and approximate, as nearly as possible, the sentence to which Sanders would then have been exposed. We examine the substantive offenses first, using the version of the United States Sentencing Guidelines ("USSG") in effect at the time the offense was completed, which would have been the version effective November 1, 1993. This was the version which was used for Sanders' sentencing.

Count II of the indictment charged Sanders with being a felon in possession of firearms. The base offense level would be 14. USSG § 2K2.1(a)(6); *see also* Pre–Sentence Report (PSR) at 6 ¶ 17 (same USSG section applied in determining base offense level for Count I). The indictment lists 55 weapons total (44 stolen, 11 not stolen or of indeterminate ownership), so that a 6–level increase is warranted as a specific offense characteristic under USSG § 2K2.1(b)(1)(F). Some of the firearms were stolen, so that an increase of 2 levels is warranted as a specific offense characteristic under USSG § 2K2.1(b)(4). Four points would represent the specific offense characteristic of using and possessing firearms in connection with another felony offense, the burglaries. USSG § 2K2.1(b)(5); PSR at 6 ¶ 20. Four more points, 2 for a leadership role in the offense (USSG § 3B1.1(c); PSR at 6 ¶ 21) and 2 for obstruction of justice by threatening Brewer (USSG § 3C1.1; PSR at 6 ¶ 23) would represent adjustments to the offense level. The offense level for Count II therefore would be:

| | |
|---|---|
| Base Offense Level | 14 |
| Number of Firearms | 6 |
| Stolen Firearms | 2 |
| Another Felony Offense | 4 |
| Leadership Role | 2 |
| Obstruction of Justice | 2 |
| TOTAL [8] | 30 |

---

7. To provide effective assistance, counsel must be aware of a potential sentence when advising a criminal defendant regarding a plea offer. The requisite awareness includes knowledge of the United States Sentencing Guidelines:

> Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings, we can say, however, that familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation....

. . .

> Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty....

*United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992) (footnote, citations omitted).

8. A note in USSG § 2K2.1 between § 2K2.1(b)(4) and (b)(5) indicates that the cumulative offense level "determined above," i.e. through the application of (b)(4), is limited to 29. The cumulative offense level at that point is 22. The note there-

Under USSG § 2X1.1(a), the base offense level and any applicable adjustments for a charge of conspiracy is determined using the Guideline for the substantive offense. The adjusted offense level for Count I as it relates to the charge of conspiracy to be a felon in possession of a firearm therefore would be 30.

Count III of the indictment, the charge of trafficking in stolen firearms, would also be calculated using USSG § 2K2.1. The base offense level again is 14. USSG § 2K2.1(a)(6). There were 44 stolen weapons attributable to Sanders, so that there is an upward adjustment of 5 points under USSG § 2K2.1(b)(1)(E). No adjustment is made for the stolen firearms because "the base offense level itself takes such conduct into account." USSG § 2K2.1, Commentary, Application Note 12. Otherwise, the adjustments are the same:

| | |
|---|---|
| Base Offense Level | 14 |
| Number of Firearms | 5 |
| Another Felony Offense | 4 |
| Leadership Role | 2 |
| Obstruction of Justice | 2 |
| TOTAL | 27 |

The adjusted offense level for Count I as a conspiracy to traffic in stolen firearms would be 27 as well. USSG § 2X1.1(a).

Count IV was a charge of witness retaliation for which the base offense level would be 12. USSG § 2J1.2(a). The offense involved a threat to cause physical injury to Brewer during judicial proceedings, so that an 8-level increase is warranted. USSG § 2J1.2(b)(1). The adjusted offense level under § 2J1.2 would be 20. However, there is a cross-reference to USSG § 2X3.1, requiring calculation of an offense level and comparison with the adjusted offense level determined under USSG § 2J1.2. USSG § 2J1.2(c)(1).

Under USSG § 2X3.1(a), the base offense level is 6 less than that applicable for the underlying offense, which in this case would be 8 since 14 is the base offense level for Counts I, II, and III. Adjustments for specific offense characteristics then are added. USSG § 2X3.1, Commentary, Application Note 1. For Count II, these would total 12 (6

for number of firearms, 2 for stolen firearms, and 4 for use of firearms during the commission of another felony offense). The leadership role enhancement does not apply since Sanders was the only person involved in this offense, and the obstruction of justice enhancement does not apply pursuant to USSG § 2J1.2, Commentary, Application Note 2. The adjusted offense level is 20. The same total would be reached with respect to the conspiracy to be a felon in possession of firearms.

For USSG § 2X3.1 as it relates to Count III, the base offense level again would be 8, with adjustments for specific offense characteristics totaling 9 (5 for number of firearms and 4 for use of firearms during the commission of another felony offense). No other adjustment is applicable, and the adjusted offense level is 17. The same total would be reached with respect to the conspiracy to traffic in firearms.

Neither of the adjusted offense levels calculated under USSG § 2X3.1 exceeds the adjusted offense level of 20 calculated under USSG § 2J1.2, so that the adjusted offense level for Count IV is 20.

Counts I, II, and III all involve the same act or transaction, and so are "grouped" to determine a combined offense level. USSG § 3D1.2(a). *See also* USSG § 3D1.2(d) (listing offenses under USSG § 2K2.1 specifically to be grouped). Count IV would be grouped with Counts I, II, and III because Count IV embodies conduct treated as an adjustment to Counts I, II, and III. USSG § 3D1.2(c). The highest offense level in the group is 30 for Count II and Count I as it relates to the same substantive offense as Count II. Because there is only one group, no units are added and the combined offense level (and total offense level) would be 30. USSG § 3D1.4. The sentencing range under the Guidelines for a total offense level of 30 and a criminal history category of IV, PSR at 11 ¶ 39, would be 135–168 months.

Of primary importance in this context, even if counsel had moved for the dismissal of Count III and that portion of Count I charging a conspiracy to traffic in stolen

fore does not affect the offense level computation, despite the fact that the total exceeds 29.

firearms, the total offense level would be the same. This is so because of the operation of the grouping rules: when Counts I, II, and III were grouped, Count II and the related charge under Count I had the highest adjusted offense level, and the offense level for Count III disappeared for all practical purposes. That is, Count III and the related charge under Count I have no effect on the total offense level. They are relevant only for the purpose of making the calculation. Thus, any benefit gained by the plea agreement is attributable directly to the fact that Count III and its related charge under Count I drove the actual Guidelines calculation performed when Sanders was sentenced.

The difference between the adjusted offense levels determined for Count II and Count III, as reflected in the above analysis, is that there is no 2–point adjustment for stolen firearms for Count III, and the number of firearms is less, 44 versus 55, so that the adjustment for number of firearms is 5 instead of 6. The total benefit obtained by pleading to Count III instead of Count II is that the total offense level is 3 points less, 27 versus 30. This difference is also reflected in the related conspiracy charge. In terms of the period of incarceration, the difference is that Sanders' Guideline range is 100–125 months, as opposed to 135–168 months. Taking into account the 30 months already served by Sanders in state custody for related offenses, the ranges would be 70–95 months versus 105–138 months.

Two other aspects of the plea agreement are important in this context. The government agreed to recommend that the court impose the minimum period of incarceration within the applicable sentencing range. Plea Agreement at 5 ¶ 10. This request is not extraordinary, and it is common for a court to follow such a recommendation. In fact, this court did so when Sanders was sentenced. N.T. 10/22/96 (transcript of sentencing hearing, record document no. 59) at 96–97. The result was the 70–month period of incarceration actually imposed.

Also, the government agreed to recommend that Sanders receive a 3–point adjustment in offense level for acceptance of responsibility. Plea Agreement at 4–5 ¶ 9. This

adjustment was not made by the court because of the obstruction of justice. USSG § 3E1.1, Commentary, Application Note 4. The obstruction of justice enhancement of 2 points means that Sanders actually increased his adjusted offense level by 5 points by not fully, timely, and affirmatively accepting responsibility.

One of the letters written by Sanders to the sister of Brewer's girlfriend, i.e. a person by whom Sanders could be sure the message would be relayed, reads in part, "PS: Tell Ron I'll see him in here sooner or later, I have bro's in every jail in the state! It will be a living hell no matter where he goes." Defendant's Exhibit 12 (introduced at Sentencing Hearing; part of record document no. 50). This rather obvious threat, along with the gestures to Brewer described above, clearly supports the obstruction of justice enhancement, which in turn negates the acceptance of responsibility adjustment. Of course, in evaluating the benefits of a guilty plea, counsel cannot presume that a client will continue to deny the obvious. See USSG § 3E1.1, Commentary, Application Note 1(a) (consideration of acceptance of responsibility includes "admitting or not falsely denying any additional relevant conduct for which the defendant is accountable . . .").

If the court had made the adjustment for acceptance of responsibility and not made the adjustment for obstruction, Sanders' total offense level for Count I and Count III pursuant to his guilty plea would have been 22. The corresponding sentencing range is 63–78 months. Subtracting the 30 months spent in state custody, and with the government's recommendation of the minimum of the guideline range, Sanders would have been facing 33 months of incarceration, as opposed to the range of 105–138 months, determined as described above. In the latter instance, the government would not be obligated to recommend the minimum of the range, and the 138–month sentence was a real possibility.

Given all of this, assuming that a jury would have found Sanders' guilty (a likely outcome, not a mere possibility), the guilty plea would save Sanders a minimum of 10 months' incarceration. More likely than this minimal benefit would be the court's sentenc-

ing at the minimum of the Guideline range based on the government's recommendation, the guilty plea saved Sanders 35 months' incarceration (the difference in the minimum of the ranges calculated without acceptance of responsibility and with obstruction of justice, 105 minus 70, is 35). Since credit for acceptance of responsibility and avoiding the obstruction enhancement were real possibilities, and again assuming that the government's recommendation were followed, counsel had good reason to expect the 33–month sentence of incarceration; the failure to obtain this benefit is attributable entirely to Sanders' threatening conduct. The total potential benefit of entering the guilty plea would have been 105 months (138 minus 33) or 72 months (using the minimum of the applicable ranges, 105 and 33).

We emphasize that, as it is, the actual benefit obtained from the guilty plea was 35 months, representing the difference between the minimum of the applicable sentencing range absent the plea minus the sentence actually imposed. Had Sanders behaved differently, a much greater benefit was a real possibility. The potential for this benefit would not have existed had counsel opted to move to dismiss Count I and Count III on the basis argued by Sanders, and had advised Sanders to proceed to trial rather than pleading guilty to Count I and Count III.

In addition, the offense level under Count II would always be three points higher than that under Count III (due to the number of weapons and the fact that the stolen weapons enhancement does not apply to Count III). Because Count III was not dismissed, that 3–point benefit remained as a bargaining chip for defense counsel in plea negotiations, an important event in any criminal case and the importance of which is magnified in the face of strong evidence, as in this case.

From all of this, we conclude that the performance of counsel was not objectively

unreasonable. The claim of ineffective assistance therefore fails, and Sanders' argument concerning the interpretation of former § 922(j) is procedurally barred. That is, Ground A of Sanders' § 2255 motion is procedurally barred, and Ground B does not set forth a valid basis for relief or a vehicle for avoiding the procedural bar.

### VI. PERJURY

■ The third and fourth grounds for relief proffered by Sanders (Issues C and D) relate to purported false information and testimony by co-defendant Ronald Brewer and reliance on those statements by the Probation Office in preparing the PSR and, in turn, by the court. In his original motion, Sanders alleged that both Brewer and Anthony Rish committed perjury. The court directed that Sanders provide a statement of the purportedly false testimony and information. Order # 1 of January 27, 1998. Sanders' statement and brief do not address any statements or testimony by Rish, and so we consider that aspect of the § 2255 motion no further.

As to Brewer, Sanders provides a list of five examples of impeachment material which he contends show that Brewer was lying when providing information and/or testimony on which the Probation Officer and the court relied in making the adjustments for Sanders' leadership role and for use or possession of a firearm in connection with another felony offense.[9]

The impeachment material cited by Sanders is not new. He refers first to Brewer's arrest in April, 1991, for burglary and theft from L & R Sporting Goods and in 1990 for burglary from a bar. These events would conflict with a statement by Brewer that he had never stolen anything before he met Sanders.

First, these matters were presented to the court during the sentencing hearing, while

---

9. Sanders incorrectly uses the term "upward departure" when referring to adjustments or enhancements to the offense level. Upward departures are a wholly separate action within the context of sentencing under the Guidelines. Departures are appropriate "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately

taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" USSG § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Adjustments are matters which have been taken into account by the Sentencing Commission, hence their inclusion within the Guidelines.

Brewer was on cross-examination. See N.T. October 21, 1996 (record document no. 58; testimony of Brewer) at 106, 140 (Brewer was driver and "lookout" in burglary of bar); at 142 (Brewer sold stolen rifle to L & R, charged by state authorities with receiving stolen property). It also should be noted that Brewer's statement regarding prior stealing was qualified: "... I never took a thing a day in my life until I met Mr. Sanders, at least that had anything to do with what we're doing or that we did during this." N.T. October 21, 1996, at 121.

Sanders next points to Brewer's purported involvement in a burglary at a diaper reprocessing plant with Lacy, prior to Sanders' own involvement in burglaries with Brewer and Lacy. In support, Sanders points to Lacy's grand jury testimony. A transcript of the testimony was introduced into evidence at the sentencing hearing, Defendant's Exhibit 11, and again this cannot be considered new evidence. Further, the transcript indicates only that Lacy knew Brewer before he met Sanders, and that Lacy became involved in the Brewer/Sanders burglary spree through Brewer. Nothing in the grand jury transcript indicates a prior burglary involving Lacy and Brewer.

The last two items of evidence are a statement by Brewer to Stephen Spencer and testimony of David Antenori at a preliminary hearing in state court. The first statement, made while Brewer and Spencer were returning from a trip to Philadelphia to buy drugs, was to the effect that Brewer wanted to burglarize a large mansion they passed. There is no evidence that the burglary ever took place, and the statement is of no practical value.

As to the second piece of evidence, Antenori could not identify Sanders, which Sanders contends means that Brewer was the "perpetrator." Actually, Antenori's testimony was

that two men sold an ATV which later was found to be stolen. N.T. April 8, 1996 (Defendant's Exhibit 1) at 21. This does not conflict with Brewer's testimony that both Sanders and Brewer were present at the sale. As to Sanders' contention that the failure to identify Sanders means that Brewer took the lead, the conclusion does not necessarily follow, nor does it add any significant information to that already before the court.[10]

In addition, the Third Circuit considered the issue of the sufficiency of the evidence as to the enhancement for possession of a firearm during commission of another felony. *See United States v. Sanders,* No. 96–7713, slip op. at 2 (3d Cir. July 16, 1997)(record document no. 66).

■ There are therefore three reasons to find that the evidence cited by Sanders does not warrant relief: (1) The evidence was before the court at the time of sentencing, and § 2255 is not a vehicle for mere reconsideration, *cf. Feldman v. United States,* 926 F.Supp. 174, 177 (S.D.Ala.) (evidence presented at trial not "new evidence" and not grounds for § 2255 relief), *aff'd,* 103 F.3d 149 (11th Cir.1996) (table), *cert. denied,* —— U.S. ——, 117 S.Ct. 1435, 137 L.Ed.2d 542 (1997); (2) The Court of Appeals already has affirmed at least one of the issues (the enhancement under USSG § 2K2.1(b)(5)), *Gonzales v. United States,* 929 F.Supp. 252, 255 (E.D.Mich.1996) (trial court's findings of fact overturned only when clearly erroneous; relief also denied when appellate court has considered issue on direct appeal and decided against defendant)[11]; and (3) to the extent the issues have not been decided by the Third Circuit, Sanders provides no basis for avoiding the procedural bar.

---

**10.** The transcript does not indicate that it was Sanders that was not identified. When asked to identify the men, Antenori replied, "That gentleman there, and I'm not sure if he was there that day (indicated). I remember seeing him. I mean I see a lot of faces when I work, especially kids because of where I work, younger kids." N.T. April 8, 1996, at 22. We assume that Brewer was the individual identified and Sanders was the individual about whom Antenori was unsure

because that is the allegation made by Sanders, not because the record is clear.

It also should be noted that this transcript was before the court at the sentencing hearing, so that this is not new evidence.

**11.** The Gonzalez court is another court which referred to the § 2255 motion as a motion for a writ of habeas corpus. 929 F.Supp. at 254.

In addition, the evidence cited by Sanders relates to very minor matters of little probative value even for impeachment. The evidence simply is insufficient to warrant a finding of plain error in our conclusions that Sanders was a leader or supervisor and that he possessed a firearm during at least one of the burglaries.

## VII. DISCOVERY

Sanders requests discovery so that he may depose Brewer for the purpose of determining what information Brewer had provided to the government. *See Smith v. United States*, 358 F.2d 683 (3d Cir.1966) (government must knowingly use perjured testimony to warrant relief under § 2255). Based on the above, discovery is not warranted as the deposition would not affect disposition of the § 2255 motion.

## VIII. CONCLUSION

Defense counsel was not ineffective for failing to move for dismissal of Count III of the indictment or the related conspiracy charge under Count I. Sanders therefore is not entitled to relief based on his second ground asserted, and is procedurally barred from pursuing his first ground.

The third and fourth grounds for relief asserted by Sanders are insufficient as providing no basis for avoiding the procedural bar, as relating to an issue affirmed on direct appeal (or as constituting a motion for reconsideration of this court's earlier disposition), and as being based on evidence insufficient to serve as a basis for overturning this court's prior factual determinations.

Sanders motion under § 2255 will be denied.