Lisander SEPULVEDA, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civil Action No. 98–3151(MLC).

United States District Court,
D. New Jersey.

Sept. 28, 1999.

Lisander Sepulveda, White Deer, PA, pro se.

Russel N. Jacobson, Assistant United States Attorney, Newark, NJ, for U.S.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of *pro se* petitioner Lisander Sepulveda to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.[1] The underlying criminal case in this Court was *United States v. Lisander Sepulveda and Margarita Corsino*, Crim. No. 97–265(MLP), filed May 6, 1997. For the reasons set forth herein, issued without oral argument pursuant to Fed. R.Civ.P. 78, the Court will deny petitioner's motion.

## I. BACKGROUND

Petitioner was indicted in a one-count indictment charging him and his co-defendant with conspiracy to import from Co-

1. Technically, a party bringing a motion under 28 U.S.C. § 2255 is a moving party rather than a petitioner for writ of habeas corpus. *See, e.g., United States v. Sanders*, 3 F.Supp.2d 554, 556–58 (M.D.Pa.1998) (discussing similarities and differences between habeas corpus petitions under 28 U.S.C. §§ 2241 and 2254, and motions under 28 U.S.C. § 2255). We will refer to Mr. Sepulveda as petitioner herein, for ease of reference and to distinguish him from his co-defendant in the criminal case.

lombia more than 500 grams of cocaine, a Schedule II narcotic drug controlled substance, contrary to 21 U.S.C. §§ 952(a) and 960(a)(1), in violation of 21 U.S.C. § 963. (Gov.App., Ex. 2.) [2]

The offense conduct of petitioner and his co-defendant, as set forth in the record of the criminal case, is not in dispute and may be summarized as follows. On April 30, 1997 a passenger arrived on a flight from Colombia to Newark airport who was discovered to have concealed in his suitcase and in two aerosol cans within the suitcase a substance which field-tested positive for cocaine. Upon being arrested by U.S. Customs agents, he agreed to cooperate in a controlled delivery of the contraband. Under the supervision of the agents, the cooperator contacted Colombia for further instructions and was directed to a hotel in Manhattan, New York. (PSR ¶¶ 7, 8.) The agents and the cooperator traveled to the hotel early in the morning of May 1, 1997, where the cooperator placed another call to the unknown co-conspirator in Colombia. That evening, petitioner and his co-defendant, Margarita Corsino, arrived at the hotel room. The cooperator told them that the cocaine was inside the suitcase and the two aerosol cans, and petitioner then took possession of the suitcase and Corsino took the cans. Both departed the hotel room and were arrested by the Customs agents. (Id. ¶¶ 9, 10.)

The evidence against defendants consisted of the following: (1) the physical items, including the substance which was confirmed by laboratory analysis to be approximately 3 kilograms of cocaine; (2) the testimony of the cooperator; (3) a videotape that was secretly made by Customs with the consent of the cooperator, showing defendants in the hotel room conversing with the cooperator and taking delivery of the suitcase and aerosol cans; and (4) the testimony of the arresting officers to confirm possession of the items by the defendants. (Id.; Gov. Br. at 3.)

Petitioner was indicted on May 6, 1997, along with his co-defendant, Ms. Corsino. (App.Ex. 2.) Petitioner was represented throughout his criminal case in this Court by retained counsel, Olga M. Arandia, an attorney admitted in the states of New York and New Jersey. (Arandia Aff.) Ms. Arandia conducted all of her communications with petitioner in his native language, Spanish, in which she is fluent. (Id. ¶ 5, n. 1.)

On August 18, 1997, petitioner appeared at a Rule 11 hearing and entered a plea of guilty to the one-count Indictment, pursuant to a Plea Agreement dated August 15, 1997. (App.Ex. 3, 5.) Petitioner was sentenced under the offense statutes, 21 U.S.C. §§ 952(a) and 960(a)(1), and the Guidelines. See U.S. Sentencing Guidelines Manual ("USSG" or "Guidelines") (Nov.1995).[3] At his sentencing hearing on

---

**2.** In addition to the § 2255 motion filed herein, which we will cite as Petition ("Pet."), the record presented in this matter includes the following: (1) Government's Answering Brief ("Gov.Br."), with exhibits as follows: Ex. A, Affidavit of Olga M. Arandia, Esq. dated 4–29–99 ("Arandia Aff."); Ex. B, copy of unpublished opinion in Tukes v. United States, Civ. No. 96–3069(WGB) (D.N.J.2–16–99); (2) Government's appendix ("App."), with exhibits as follows: Ex. 1, Criminal Complaint dated 5–2–97; Ex. 2, Indictment filed 5–6–97; Ex. 3, Plea Agreement dated 8–15–97 ("Plea Agreement"); Ex. 4, Application for Permission to Enter Plea of Guilty signed 8–18–97 ("Rule 11 Form"); Ex. 5, transcript of plea hearing on 8–18–97 ("plea hearing"); Ex. 6, transcript of sentencing hearing on 1–20–98; and Ex. 7, Judgment of Conviction filed 2–5–98. We

have also reviewed the Presentence Investigation Report dated 11–11–97 ("PSR"), contained in the record of the underlying criminal case, Docket No. 97–265–001.

**3.** The offense statute provides in pertinent part:

It shall be unlawful to import ... into the United States from any place outside thereof, any controlled substance in schedule I or II....

21 U.S.C. § 952(a).

Any person who—

(1) contrary to section 952 ... of this title, knowingly or intentionally imports or exports a controlled substance,

...

shall be punished as provided in subsection (b) of this section.

January 20, 1998, he was sentenced to the mandatory minimum imprisonment of 60 months, together with 4 years supervised release and a fine of $1,000.[4] (App.Ex. 7.) He filed no direct appeal.

Petitioner filed this motion *pro se* on July 2, 1998, seeking to vacate his guilty plea and sentence pursuant to 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel. (Pet. at 4–12.) The motion was timely within the statutory one-year limitation period. 28 U.S.C. § 2255(1); *see Kapral v. United States*, 166 F.3d 565, 570 (3d Cir.1999).

We made an initial review of the Petition under Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), and directed the filing of an Answer. The Answer and exhibits filed by the government include an affidavit by petitioner's counsel in the criminal case, Ms. Arandia. (Gov.Br.Ex. A.) In view of the expanded record thus presented by the government, we afforded petitioner an opportunity to respond. *Cf.* Section 2255 Rule 7(c) (where court directs submission of an expanded record, the opposing party shall be afforded an opportunity to admit or deny its correctness). Petitioner did not further respond.

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, we find that they show conclusively that petitioner is not entitled to relief on the claims asserted. Accordingly we will decide the matter without an evidentiary hearing, explaining our reasons as we address each of petitioner's asserted grounds for relief.

## II. DISCUSSION

### A. *Petitioner's Allegations*

■ Section 2255 of Title 28, United States Code, provides that a prisoner in custody under sentence of a federal court may move the court which imposed the sentence to vacate, correct, or set aside a sentence, on the grounds that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the Petition. *See United States v. Abbott*, 975 F.Supp. 703, 705 (E.D.Pa.1997).

The instant Petition seeks to vacate, set aside or correct the sentence, claiming that the guilty plea was not voluntary due to ineffective assistance of counsel in the following respects: (1) counsel allegedly failed to recognize that petitioner was eligible for the safety valve provision of the Guidelines, § 5C1.2; and (2) petitioner entered his guilty plea based on advice of counsel that he would not receive more than a 46 to 57 month sentence. (Pet. at 4–13.)

---

*Id.* § 960(a).

> In the case of a violation of subsection (a) of this section involving-
>
> . . .
>
> (B) 500 grams or more of a mixture or substance containing a detectable amount of-
>
> . . .
>
> (ii) cocaine . . .;
>
> . . .
>
> the person committing such violation shall be sentenced to a term of imprisonment of not less than 5 years. . . .

*Id.* § 960(b)(2).

**4.** The sentence was calculated under the Guidelines as follows. The offense level was a base offense level of 28 for at least 2 but not more than 3.5 kilograms of cocaine, § 2D1.1(c)(6); a two-point reduction for minor role, § 3B1.2(b); a three-point reduction for acceptance of responsibility, §§ 3E1.1(a), -(b); for a total offense level of 23. (PSR ¶¶ 15–25.) The criminal history category was I, as there were no reported convictions. (*Id.* ¶ 28.) The resulting Guideline range for imprisonment would be 46 to 57 months. However, because of the statutory mandatory minimum the range became 60 months. (*Id.* ¶ 43 (citing USSG § 5G1.1).)

## B. Standard for Ineffective Assistance Challenge to Guilty Plea

■ The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "'reasonably effective assistance' of counsel." *United States v. Day*, 969 F.2d 39, 42 (3d Cir.1992) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The Supreme Court in *Strickland* has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. 2052. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).[5]

■ The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. 2052; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir.1999); *Reese v. Fulcomer*, 946 F.2d 247, 256–57 (3d Cir.1991), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992); *United States v. Gray*, 878 F.2d 702, 710 (3d Cir.1989). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

■ The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

The *Strickland* Court further held that both prongs must be established in order to meet the claimant's burden, and that if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component,

---

5. The Third Circuit has clearly stated its preference that such claims generally be addressed in the first instance by the district court under a § 2255 motion, rather than on direct appeal. *See, e.g., United States v. Tobin*, 155 F.3d 636, 643 (3d Cir.1998); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994); *United States v. DeRewal*, 10 F.3d 100, 103–04 (3d Cir.1993), *cert. denied*, 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result. *Id.* at 697, 104 S.Ct. 2052.

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice " 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

The Supreme Court held in *Hill v. Lockhart* that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence set forth in the first prong of the *Strickland* test. 474 U.S. at 58–59, 106 S.Ct. 366. However, the *Hill* Court specifically held that where the collateral challenge is to a plea of guilty rather than a trial verdict, the "prejudice" prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.; see Parry v. Rosemeyer,* 64 F.3d 110, 118 (3d Cir.1995) (citing *Hill* ), *cert. denied,* 516 U.S. 1058, 116 S.Ct. 734, 133 L.Ed.2d 684 (1996). In setting forth that standard, the Court in *Hill* empha-

sized the "fundamental interest in the finality of guilty pleas." *Hill,* 474 U.S. at 58, 106 S.Ct. 366 (citing *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)).

The Petition on its face fails to state a claim under the *Hill* test, because it is devoid of any assertion that but ·for the alleged errors of counsel, petitioner would not have pled guilty and would have insisted on going to trial. *See Hill,* 474 U.S. at 60, 106 S.Ct. 366 ("Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test [in challenging a guilty plea], the District Court did not err in declining to hold a hearing on [his] ineffective assistance of counsel claim."). Nevertheless, while it is by no means clear that given the strong evidence against him petitioner would have elected to go to trial rather than plead guilty, we will construe his *pro se* pleading liberally. *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Hurd v. Romeo,* 752 F.2d 68, 70 (3d Cir. 1985). Therefore, we will examine the merits of petitioner's claim despite his failure to plead the "prejudice" required under *Hill.*

## C. *Alleged Errors of Counsel*

Petitioner's first contention is that his defense counsel, Ms. Arandia, failed to acquire sufficient knowledge of the Guidelines to be aware that her client was eligible for safety valve relief under USSG § 5C1.2. (Pet. at 4–8.) Ms. Arandia in her affidavit states in no uncertain terms that she was well aware of § 5C1.2 and thoroughly discussed the safety valve with petitioner, both before he entered his guilty plea and again before his sentencing hearing. She avers that she informed him of the five criteria necessary to qualify for safety valve treatment, and that he refused to comply with the fifth requirement. That requirement, as set forth in § 5C1.2, would have been to truthfully provide to the government all information and, evi-

dence he had concerning the offense and any others that were part of the common scheme or plan. The government also states that it repeatedly invited petitioner, through counsel, to make full disclosure, and he steadfastly refused.

The so-called "safety valve" provision, 18 U.S.C. § 3553(f), was added by section 80001(a) of the Violent Crime Control and Law Enforcement Act of 1994, and was first effective under the Guidelines on September 23, 1994. *See* USSG § 5C1.2, background note (citing USSG Appendix C, amendments 509, 515). By its terms it enables a person otherwise subject to a statutory mandatory minimum sentence, but lacking in significant prior criminal history, to be sentenced under the otherwise-applicable Guideline range if they meet all five criteria. The expressed Congressional intent in enacting the safety valve was to foster greater coordination between mandatory minimum sentencing and the guideline system. *Id.* (citing H. Rep. No. 460, 103d Cong., 2d Sess. 3 (1994)). We may take judicial notice that this statute, which authorized sentencing courts to ameliorate the harsh effect of mandatory minimums in the limited circumstances specified, was long-sought and

widely publicized in the criminal justice arena.[6]

The government and Ms. Arandia both aver that petitioner was made aware of the potential of safety valve relief in his case if he made full disclosure, and that he made a conscious and deliberate decision not to pursue that route. The government confirms that Sepulveda never made any statement at all to the government concerning the offense, much less any statement sufficiently complete to satisfy the disclosure requirement of the safety valve. (Gov. Br. at 20.) Ms. Arandia certifies that both before the guilty plea and before the sentencing, she explained to petitioner each of the five requirements to qualify for the safety valve, and that he repeatedly told her that he was unwilling to make any statement to the government about the facts relating to the offense because he feared reprisals to his family in Colombia. She states further that "I told [petitioner] ... that by refusing to make any statement about his crime, he was precluding himself from qualifying for the safety valve and was virtually assuring himself a sentence of at least sixty months of imprisonment." (Arandia Aff. ¶¶ 5–7.)

It is well settled that conclusory allegations are insufficient to entitle a petitioner

---

**6.** Before the crime bill was passed, the controversy surrounding mandatory sentences and their possible reduction was the subject of numerous newspaper and magazine articles, including but not limited to: *Empty Seats*, The New Republic, Aug. 15, 1994, at 7; *Bill Would Have Provided Funding for More Cops, Prisons, Prevention*, The Star–Ledger, Aug. 12, 1994; Charles Schumer, *We Must Keep Violent Criminals Locked Up*, Ltr. to Ed., N.Y. Times, June 24, 1994, at A26; *Judges Blast Mandatory Sentences*, The Star–Ledger, Mar. 17, 1994; Leslie Phillips, *House Panel Set to OK 'Three–Strikes' Crime Bill*, USA Today, Mar. 17, 1994, at 10A; Ted Gest, *A New Attack on Crime*, U.S. News & World Rep., Oct. 18, 1993, at 49, 52.

After it was passed, the effect of the crime bill and the safety valve was the subject of several television programs, including but not limited to: *Burden of Proof* (CNN television broadcast, Nov. 9, 1995); *Rivera Live* (CNBC television broadcast, Oct. 24, 1995); *Maximum Insecurity—Part 2—Mandatory Mini-*

*mums* (CNN television news broadcast, Feb. 27, 1995). It was also the subject of mass market newspaper articles, including but not limited to: Jim Efstathiou, *The Big Squeeze; Hard-line Drugs Laws are Clogging Our Prisons*, The Record, Mar. 26, 1995, at A31; Robert S. Stein, *Crime & Mandatory Punishment*, Investor's Bus. Daily, Nov. 2, 1994, at A1. In addition, the crime bill's safety valve was the subject of several legal newspaper articles, including but not limited to: Decisions Federal Courts Third Circuit: Sentencing; United States v. Sabir, *Third Circuit, No. 96–5626*, 6 N.J. Law.2009 (1997); Jennifer P. Heimmel, *Decisions Federal Courts Third Circuit: Sentencing; Downward Departure is Denied for Assisting Another District if Sentencing District Opposes*, 6 N.J. Law. 1444 (1997); Decisions Federal Courts Third Circuit: Sentencing; *United States v. Wilson, Third Circuit, No. 95–7245*, 6 N.J. Law. 718 (1997); Daniel Wise, *Judge Cuts Prison Term Under New Federal Law*, N.Y.L.J., Dec. 8, 1994, at 1.

to relief under § 2255. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Machibroda v. United States,* 368 U.S. 487, 495–496, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir.1991); *United States v. Dawson,* 857 F.2d 923, 928 (3d Cir.1988). In the face of the detailed facts adduced in the submissions by the government, we find that petitioner's vague and conclusory allegations to the contrary are patently inadequate. Accordingly we find that defense counsel did discover and advise petitioner of the potential availability of safety valve relief from the five-year mandatory minimum if he qualified under USSG § 5C1.2, and we hold that counsel's performance was not deficient under the first prong of the *Strickland* test. 466 U.S. at 687, 104 S.Ct. 2052. For the same reason, we hold that no evidentiary hearing is required in order to further test those allegations. *See Brown v. United States,* —— F.Supp.2d ——, —— n. 11, No. 96–2865, slip op. at 35–36 n. 11 (D.N.J. July 26, 1999) (collecting and discussing cases).

█ Petitioner's remaining contention is similarly without merit, as the files and records of the criminal case conclusively demonstrate. Here he alleges in essence that his guilty plea was constitutionally infirm because counsel assured him that he would receive a sentence of not more than 46 to 57 months, whereas he discovered after entering his plea that in fact he was facing a mandatory minimum of 60 months. (Pet. at 9–12.) Petitioner does not, however, challenge the adequacy of the Rule 11 hearing at which his guilty plea was entered and accepted by this Court.[7] At that hearing, during which petitioner testified under oath, the Plea Agreement and Rule 11 Form (each stating the mandatory minimum of five years imprisonment) were reviewed in detail with him on the record; he acknowledged understanding that he could not rely on any other estimates or assurances from anyone; and this Court unequivocally informed him that five years imprisonment was the mandatory statutory minimum in his case. (App. Ex. 5 at 7–16.)

█ It is well settled that when a defendant considers the government's offer of a plea agreement, a reasonably competent attorney will attempt to learn all of the facts of the case and to make an estimate of a likely sentence. *See Hill,* 474 U.S. at 56–60, 106 S.Ct. 366 (relying on *McMann v. Richardson,* 397 U.S. 759, 769–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Before the attorney allows the client to plead guilty, the attorney must also communicate the results of that analysis. *McMann,* 397 U.S. at 769–71, 90 S.Ct. 1441. Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or of going to trial, the

---

7. Petitioner's plea colloquy conformed with the requirements of Rule 11, which provides in pertinent part:

(c) ADVICE TO DEFENDANT. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances....

. . . .

(d) INSURING THAT THE PLEA IS VOLUNTARY. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

Fed.R.Crim.P. 11(c)-(d) (eff.Dec. 1, 1989); (*see* App. Ex. 5, transcript of Rule 11 plea hearing).

scrutiny must be undertaken in good faith. *Id.* It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea. *Id.* at 769–71, 90 S.Ct. 1441.

■ The established general rule is that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel. *See Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir.1972) (citing *Wellnitz v. Page,* 420 F.2d 935 (10th Cir. 1970)); *see also United States v. Marzgliano,* 588 F.2d 395, 399 n. 6 (3d Cir.1978) (explaining different rule where allegation is that plea was based on misconduct or misrepresentation by defense counsel); *United States v. Valenciano,* 495 F.2d 585, 588 (3d Cir.1974) (same). This rule has been reinforced with the advent of Guideline sentencing and the detailed procedures to be followed in conducting the Rule 11 colloquy at the guilty plea hearing. *See, e.g., United States v. Stephens,* 906 F.2d 251, 253 (6th Cir.1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.... This is especially true under the new Sentencing Guidelines.") (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) ("[The Sentencing Guidelines] reinforce our earlier decisions on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of sentence.")).

The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez,* 169 F.3d 1049, 1053 (7th Cir.1999) ("[A]n attorney's mere inaccurate prediction of the sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States,* 33 F.3d 1047, 1051–52 (9th Cir.1994) ("The district court informed [defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel's] representation of him. As a result, [he] cannot claim he was prejudiced by [counsel's] alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990) ("[Defendant's] attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel.... Further, [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.") (citation omitted).

We find these principles to be controlling here. Ms. Arandia's affidavit states that petitioner was well-informed by her, both before the plea and before the sentencing, that if he did not satisfy the safety valve criteria his mandatory sentence would be at least five years. (Arandia Aff. ¶¶ 9, 10.) However, even assuming *arguendo* the truth of petitioner's contention that she told him that the most he would get would be the projected Guideline range of 46 to 57 months, that contention is unavailing to establish either the deficiency or the prejudice prong of the *Strickland* test where, as here, a thorough Rule 11 hearing was conducted at which petitioner acknowledged under oath that he was aware of the five-year statutory minimum. We must therefore hold that petitioner has failed to show any constitutional infirmity in the assistance of counsel in this respect.

### III. CONCLUSION

We find that petitioner has not met his burden of proof on either of his claims

under 28 U.S.C. § 2255. Based upon our review of the record, we hold that he was not deprived of effective assistance of counsel with respect to his potential "safety valve" treatment under USSG § 5C1.2, nor with respect to any sentencing estimate provided by counsel. Accordingly, we hold that his guilty plea and his sentence were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c); *cf.* Fed. R.App. P. 22; Local App. R. 22.2. A certificate of appealability is issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, petitioner has failed to make such a showing here.

An appropriate Order accompanies this Memorandum Opinion.